(58 South. 336.)

No. 18,555.

A. LESCHEN & SONS ROPE CO. v. C. T. PATTERSON & CO., Limited.

(April 8, 1912.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 878*) — REVIEW — SCOPE AND EXTENT.

Where defendant's exception to the capacity of the plaintiff to sue and stand in judgment was overruled, and plaintiff appealed from an adverse judgment on the merits, and the defendant's answer to the appeal was silent as to the judgment on the exception, *held*, that the judgment on the exception was final, and could not be reviewed in the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*]

2. SEQUESTRATION (§ 5*)—GROUNDS—FEAR OF REMOVAL OF PROPERTY.

A sequestration of movables may be ordered in a suit for possession by the alleged owner, when he fears that the defendant may send the property in dispute out of the jurisdiction of the court during the pendency of the suit. C. P. art. 275. In the case of articles of commerce, the refusal to deliver is calculated to create a fear on the part of the plaintiff that they will be sold and sent out of the jurisdiction of the court.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. § 4; Dec. Dig. § 5.*]

3. CONTRACTS (§ 250*) — RESCISSION—RIGHTS OF PARTIES.

A contract right to cancel an agreement on 30 days' notice cannot be denied on the theory that the delay is unreasonably short.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1144; Dec. Dig. § 250.*]

Appeal from Civil District Court, Parish of Orleans; Thos. C. W. Ellis, Judge.

Action by A. Leschen & Sons Rope Company against C. T. Patterson & Co., Limited. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Hall, Monroe & Lemann, for appellant. McCloskey & Benedict, for appellee.

LAND, J. Plaintiff, a Missouri corporation, sued to recover possession of a large quantity of steel wire rope, of an estimated value of $30,000, which had been consigned by plaintiff to the defendant, to be sold by the latter on commission, pursuant to a certain written contract annexed to the petition. Plaintiff also sued for $149.96, balance on account of sale of rope made in July, 1906. Plaintiff sued out a writ of sequestration, under which the rope in controversy was seized by the sheriff.

Plaintiff prayed for judgment decreeing petitioner to be the owner of the wire rope described in the exhibit annexed to the petition, and entitled to the possession thereof, and sustaining the writ of sequestration and ordering the delivery of said rope to the petitioner, and for judgment for the value of all such wire rope as may have been dispos-

ed of by the defendant before the execution of the sequestration, and for the sum of $149.96, with interest and costs.

The contract between the parties was executed on June 13, 1902, and was, in general terms, an agreement for the consignment and sale of wire rope on a commission basis. The contract contained a stipulation as follows:

"This agreement can be cancelled by either party by giving thirty days notice to the other party."

The petition alleged that such notice was given more than 30 days prior to the institution of the suit.

The rope in question was sequestered, and by consent the president of defendant's company was appointed keeper. After the legal delays, the property was delivered to the plaintiff on a release bond.

Defendant excepted to the prosecution of the suit on the grounds: (1) That plaintiff is not a corporation. (2) That, if it be a corporation, it is a foreign corporation, and has not complied with the Constitution and statutes of this state, and is therefore without authority to sue or stand in judgment.

Defendant filed a rule to dissolve the writ of sequestration on the grounds: (1) That the affidavit is false and untrue. (2) That the affiant had no authority to make the same.

The exception and rule were tried on the merits, and were overruled by the court.

Defendant then answered, admitting contract, consignment of wire, etc., but averring the breach of the agreement by three sales of wire, made by the plaintiff in the territory assigned to the defendant, and by plaintiff's refusal to honor orders, and denying the right of the plaintiff, under the circumstances to dissolve the contract by giving 30 days' notice.

Defendant, in its answer, denied that the debt of $149.96, claimed in the petition, was due at the date of the institution of the suit, and averred that the allegations for the sequestration were untrue, false, and malicious, and had damaged the respondent, in his reputation and credit, in the sum of $20,000, for which defendant prayed judgment in reconvention.

The case was tried on its merits, and judgment was rendered, rejecting plaintiff's demand and dismissing its suit as in case of nonsuit, dissolving the writ of sequestration, and in favor of the defendant for $350 damages.

Plaintiff appealed, and the defendant has answered, praying that the judgment be amended by increasing the amount of the reconventional demand to $20,000.

[1] The exception to the capacity of the plaintiff to sue and stand in judgment was tried and overruled. Plaintiff appealed from the judgment on the merits of the cause, and defendant prayed for the amendment of the same judgment, but did not pray for the reversal of the judgment overruling the exception. The defendant's counsel say in their brief:

"The exceptions filed in this suit were filed seriously. They were overruled by the court a qua; but we believe they are valid and fatal to the plaintiff's suit."

But this court cannot review the ruling on the exceptions filed by the defendant. In City of New Orleans v. New Orleans Jockey Club, 115 La. 911, 40 South. 331, where an exception to the capacity of the mayor to sue was overruled, and the suit was dismissed on an exception of no cause of action, and the plaintiff appealed, this court said:

"The judgment before us categorically overrules the exception to the authority of the mayor to prosecute the suit. We cannot reverse the ruling without amending the judgment, and can no more amend the judgment, in that respect, at the instance of the appellees, who have not by answer prayed for the amendment, than we could reverse that part of the

judgment which dismisses the suit, if the defendant had appealed, and the plaintiffs had not answered and prayed for such amendment."

Among other cases cited in support of this ruling is Talle v. Monasterio, 48 La. Ann. 1232, 20 South. 687, in which a plea of prescription by the defendants had been overruled, and the plaintiffs had appealed on other issues, and defendants had prayed for no amendment of the judgment, but urged in argument that the trial judge erred in overruling their plea of prescription. The court summed up the law as follows:

"In other words, the judgment of the lower court becomes final as to the party who takes no appeal and asks no amendment in the mode pointed out by the Code of Practice."

The defendant, by appearing in this court on the merits and praying for an amendment of the judgment rendered on the merits of the case, has acquiesced in the interlocutory decree, overruling the exceptions to the capacity of the plaintiff to sue and stand in judgment.

[2] The plaintiff owned the rope in question, and had the contract right to cancel the agreement by giving 30 days' notice to the defendant. At the end of the delay, plaintiff's agent made amicable demand for the delivery of the property. Defendant's president treated the demand with contempt, and ordered the agent out of his office. The refusal of the defendant to deliver the rope was well calculated, under the circumstances, to create a fear in the mind of plaintiff's agent that defendant would sell the rope in the usual course of business. The agent of the plaintiff inferred from the refusal that the defendant intended to hold and dispose of the rope under the terms of the contract. That such was the intent of the defendant was foreshadowed in the letter of August 9, 1906, to the plaintiff, in which, after referring to the withdrawal of the agency, the defendant wrote as follows:

"We will object seriously to any move of this kind as it would take us several months to make arrangements in the wire rope line that would be satisfactory to us, and would cost us thousands of dollars. If you want to terminate the agreement say January 1st, or in a reasonable time—but that would be a matter which will be considered, but if you insist on this course, we have several matters we will bring up, and we will take the stand that your recent correspondence has been unreasonable; that there has been nothing done by us to bring forth such letters, and will protect our rights in the matter to the very fullest extent in the course that seems best to us at the time."

[3] In the answer, the defendant avers that the plaintiff had no right, under the contract, to give the notice of cancellation; that 30 days' notice was an unreasonable and prohibitive delay, even if plaintiff had the right to give said notice.

It is manifest, we think, that defendant intended to hold and dispose of the rope under the contract of consignment. The wire rope was an article of commerce; and the refusal to deliver was calculated to create a fear that the property would be sold and sent out of the jurisdiction of the court.

On September 1, 1906, the defendant owed plaintiff over $4,000 for consignment sales for July, 1906, and the account was settled in October of the same year. Moreover, a settlement was due for the sales for the month of August, 1906.

The only business disputes between the parties were as to the commissions on three sales made by the plaintiff in the territory claimed by the defendant. In two of these sales, commissions had been conceded to the defendant; and in the third commissions were refused, on the ground that the sale was made to a person doing business outside the defendant's territory. The only substantial difference between the parties was as to the cancellation of the contract.

As to the small account sued on, there is no doubt that it was owing by the defendant to the plaintiff on September 1, 1906; but we gather from the deposition of Mr. Taylor, secretary of the plaintiff, that the account was subsequently settled. Record, 77.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiff be recognized as owner and entitled to the possession of all the steel wire rope described in the petition and exhibits thereto annexed; and it is further ordered that the writ of sequestration be maintained, and that defendant's reconventional demand be rejected, and that defendant pay costs in both courts.