ARROYO & VALIENTE, Plaintiffs and Appellants, *v.* NORTH BRITISH & MERCANTILE INS. Co., Defendant and Appellee.

No. 4054. Argued April 18, 1928.—Decided May 10, 1928.

M. *Tous Soto* and *V. M. Fernández* for the appellant. *Pedro G. Quiñones* for the appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Arroyo & Valiente, a mercantile partnership of Vega Baja, had an insurance contract with the North British & Mercantile Insurance Company, Ltd., domiciled in London, England, and doing business in Porto Rico at the time refer-

red to in the pleadings in this case. By that contract, entered into on March 13, 1924, and contained in a fire insurance policy, the insurance company, later the defendant, bound itself to indemnify the plaintiff up to the amount of eight thousand dollars for any damage caused by fire to a quantity of tobacco belonging to the appellants herein and stored in a warehouse of Juan Arroyo. The duration of the policy and risk was six months, or from March 13 to September 13, 1924, Arroyo & Valiente paying to the insurer the premium specified in the policy. On the night of May 15–16, 1924, a fire occurred in the building in which the insured tobacco was stored and completely destroyed sixty quintals of stripped tobacco valued by the plaintiff at $3,000, and 500 quintals of leaf tobacco valued by them at $18,375. In addition to the policy sued on the tobacco was protected by two other policies of other companies for the sum of $13,375. On May 12, 1924, the plaintiff-appellants herein were informed by telegraph by the defendant company that the company had canceled the fire insurance policy in question. The plaintiffs demanded payment by the defendant of the amount of the insurance and upon not receiving it they brought an action in the District Court of San Juan to recover $6,277 and the costs, alleging in substance the foregoing facts and also that they had given due notice to the defendant and forwarded to it an affidavit regarding the merchandise destroyed by the fire and its value.

In its answer to the complaint the defendant alleged that at the time of the fire the policy was not in force because the defendant had canceled it by a telegram sent to the plaintiffs on May 12, 1924, and received by the plaintiffs, and that the cancellation was verbally ratified on May 15 of the same year to the managing partner of the plaintiffs in the office of Sobrinos de Ezquiaga, the agents of the defendant in Porto Rico, and that such cancellation had been made by virtue of a condition of the policy. It was alleged also that on the day of the fire the stripped tobacco in the warehouse of the

plaintiffs was worth less than the valuation of the plaintiffs, or about $10 per quintal; that the loss has not been proved nor its payment demanded, and that the complaint was premature.

The case went to trial and the evidence was heard, and on May 28, 1925, the court delivered an opinion and rendered judgment dismissing the complaint, with the costs on the plaintiffs.

The present appeal was taken from that judgment.

Three errors are assigned by the appellants.

The first assignment refers to the supposed violation of section 1223 of the Civil Code. It is contended by the appellants that the clause of the policy by virtue of which the insurer may cancel the policy without any other requisite than notice to the insured is contrary to the spirit of the statute cited and therefore null and void.

Section 1223 of the Civil Code reads as follows:

"The validity and fulfillment of contracts can not be left to the will of one of the contracting parties."

The clause of the policy referred to by the appellants is as follows:

"Clause 10.—The insured at any time may demand the termination of the present insurance, it being understood that the part of the premium corresponding to the time elapsed, computed in accordance with the ordinary tariff of short term policies, shall become the property of the company. The latter shall have the same right to cancel at any time its policy by means of a mere notice to the insured who then may demand the refund of the part of premium corresponding to the time still to run from the date of the cancellation."

We have considered carefully the argument of the appellants and undoubtedly it is presented with skill, but it is not sound.

Section 1223 of our Civil Code is only a reproduction of section 1256 of the Spanish Civil Code. In one American nation the same thing occurs as in Porto Rico. Honduras

copied the section as it appears in the Spanish Code and we are not informed that it has been amended. This is the general sense of the codes and the rule is no other than that of the Roman Law as stated in Law 8, Title VII, Book XLIV, of the Digest in the following words: *"Sub hac conditione 'si volam' nulla fit obligatio,"* or "No obligation is contracted under this condition, 'if I wish.' "

The existence and reality of this rule are in harmony with the nature of the contractual obligation. There must concur in the latter, necessarily and inevitably, two *wills,* which agree and concur for a lawful purpose. Any stipulation, agreement or intent which eliminates either of those two wills destroys the agreement and the contract does not come into existence.

Laurent has expressed the juridical situation in cases similar to that of sections 1170 and 1174 of the Code of Napoleon by a simple example and axiom as follows: "If I say 'I bind myself if I wish,' as it depends upon me to invalidate the obligation, there is no nexus. But if I bind myself by stipulating the right to rescind the obligation at my will, I am bound so long as I do not express my purpose to rescind the contract."

And Mucius Scaevola, the Spanish commentator, says:

"What according to section 1356 can not be left to the will of one of the contracting parties is the *validity and performance* of contracts; both concepts having reference to the essence of the obligation, to its substance, to its nature, thus excluding what is accidental. What is prohibited by the law is the stipulation by virtue of which there is left to the will of the individual the existence or nonexistence of the obligation, its birth, but not that other faculty of determining when and how it must cease to exist, provided it is alive." Q. Mucius Scaevola, Commentaries on the Civil Code, vol. 20, p. 515.

Commenting on the same section Manresa says:

"Likewise the text of the section, the prohibition referring to the will of *one* of the contracting parties, shows that it is perfectly

legal to leave the performance, under the negative form of rescission, to the will of either party, a case of frequent occurrence in certain contracts (hiring services, furnishing electric energy, etc.) because in that supposition the section is not violated nor is there discrimination as between the parties who remain with the same powers in regard to performance." Manresa, Civil Code, vol. 8, p. 627.

There are many cases decided by the courts of the United States cited in 13 Corpus Juris, 606, as *Bour* v. *Kimball*, 46 Ill. A. 327; *A. Leschen, etc., Rope Co.* v. *Patterson*, 130 La. 557, 58 So. 336; *McCullough's Lead Co.* v. *Strong*, 56 N. Y. 660; *U. S. Aluminum Co.* v. *Calvert Lith. Co.*, 49 Misc. 491, 97 N. Y. S. 1042, and others stating the law as follows:

"A contract may provide that it shall come to an end at the option of one or either of the parties, and such a stipulation when fairly entered into will be enforced if not contrary to equity and good concience."

In *Schwab* v. *Baremore*, 95 Minn. 295, 104 N. W. 10, it was said by the court:

"It is entirely competent for the parties to a contract to provide for the discharge or annulment thereof, either by subsequent agreement or by incorporating provisions or conditions to that end in the original agreement, and they may fix and limit the rights and liability of each in the event of a failure of performance, and the courts will enforce contracts in this particular precisely as in other respects, and in accordance with the rights of the parties as they are thus fixed and limited."

Section 1223 of the Civil Code of Porto Rico is sufficient to convey the meaning of the true theory. It has not been the intention of the legislators *to leave to the will of one of the contracting parties the validity and performance* of the contractual obligation; that is, that which affects the life and the existence of the obligation. But as regards its rescission it can be stipulated in conformity with section 1222 of the Code. And this is what occurs in the contract in this case, a contract which has been perfected by the concurrence

of consent, subject-matter and consideration, which is valid and enforceable and is binding; but which is conditioned by the expression of the will of the parties as to *when* and *how* it may be rescinded by either of the parties having the right to do so, not in regard to one of them but to each and every party thereto.

The clause referred to by the appellants does not leave to the option of one of the parties the validity and performance of the contract. It is valid and effective when perfected and has the necessary conditions for being performed and the parties bind themselves to perform it. This is all that is required of the contract so that it may not be in conflict with the provisions of section 1223 of the Civil Code.

If the construction offered by the appellant were correct perhaps the nullity of the contract as a whole would have to be sustained for lack in the consent of the concurrence of different wills. That theory could not be sustained by the party who sued for the performance of the contract which as a first condition requires the existence of the contract under conditions of validity and exigency.

Therefore the first assignment of error is without merit.

As regards the second assignment, the appellants contend that under section 51 of the Code of Commerce telegraphic correspondence shall be effective only when the parties to the contract previously admitted this medium in writing and under the conditions specified in that statute.

That statute speaks only of the validity of telegraphic correspondence as a means of contracting. In the case before us the contract was made in the usual form of insurance, that is, by a written policy. The telegram has only been used in order to inform the appellants of the termination of the insurance. Clause 10 of the policy shows that the notice may be verbal, by letter, by telegraph and even by telephone. Moreover, it appears from the record that the notice was given not only by telegraph but was given personally to one of the partners of the appellant firm.

The second assignment is erroneous.

The appellants contend that according to section 1262 of the Civil Code the rescission carries with it the return of the subject-matter of the contract. This question is raised for the first time now. We are of the opinion that there is no justification for asserting it at this stage of the case, particularly when the party raising it, instead of suing in the lower court for the rescission or its consequences, has been demanding the performance of the contract.

In any case, the stipulation contained in clause 10 of the insurance policy makes all discussion useless and eliminates doubt in this particular. The parties agreed thereby that when the right to rescind should be exercised it would be sufficient to refund the part of the premium corresponding to the time still to run from the date of the annulment. That stipulation, which is an integral part of the contract, is the law for the parties.

We do not agree with the appellants as regards the third assignment of error.

The judgment appealed from must be affirmed.