ARROYO & VALIENTE, demandante y apelante, *v.* NORTH BRITISH & MERCANTILE, INC., demandada y apelada.

No. 4054.—*Visto:* Abril 18, 1928. *Resuelto:* Mayo 10, 1928.

*M. Tous Soto* y *V. M. Fernández,* abogado del apelante; *Pedro G. Quiñones,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Arroyo & Valiente, sociedad mercantil domiciliada en Vega Baja, P. R., tenía un contrato de seguro con North British & Mercantile Insurance Company, Ltd., una compañía de seguros con domicilio en Londres, Inglaterra, y que hacía negocios de seguro en Puerto Rico en las épocas a que se refieren las alegaciones en este caso. Por tal contrato, celebrado en 13 de marzo de 1924, y hecho constar en póliza de seguro contra incendio, la compañía aseguradora, luego demandada, se obligó a indemnizar a la demandante, hasta la suma de ocho mil dólares, los daños que por causa de incendio pudieran ocurrir a una cantidad de tabaco, propia de la aquí apelante, y depositada en un almacén de Juan Arroyo; siendo el término de dichos contrato y riesgo, el de seis meses, a contar del 13 de marzo de 1924, y a expirar el día 13 de septiembre del mismo año, a las cuatro de la tarde; pagando Arroyo & Valiente a la compañía la prima de seguro en la cuantía que en el contrato se expresa. En la noche del 15 al 16 de mayo de 1924 se declaró un incendio

en el local en que se hallaba almacenado el tabaco objeto del seguro, quedando completamente destruídos 60 quintales de tabaco despalillado, cuyo valor fija la demandante en $3,000, y 525 quintales de tabaco en rama, que la misma parte valora en $18,375. Ese tabaco se hallaba protegido, además de la póliza citada, por otras dos de otras compañías, por valor de $13,375. La aquí demandante-apelante, en fecha 12 de mayo de 1924, fué avisada por telégrafo, por la compañía demandada, de que ésta había cancelado la póliza de seguro contra incendio de que se trata en este caso. La demandante reclamó a la demandada el pago del seguro; y no habiéndolo recibido, interpuso demanda ante la Corte de Distrito de San Juan, reclamando $6,277 y las costas, y alegando, substancialmente, lo que queda expuesto y además que había dado en tiempo el aviso y enviado a la demandada declaración jurada relativa a la mercancía destruida por el incendio y a su valor.

La demandada alegó al contestar la demanda, que al tiempo de ocurrir el siniestro la póliza no estaba en vigor, porque la demandada la había cancelado mediante un telegrama que envió a la demandante en 12 de mayo de 1924, y el que fué recibido por la demandante, y que la cancelación fué verbalmente ratificada el 15 de mayo del mismo año, al socio gestor de la demandante en la oficina de Sobrinos de Ezquiaga, agentes de la demandada en Puerto Rico; y que tal cancelación se había hecho en virtud de una cláusula de la misma póliza; alegó también que en la fecha del siniestro el tabaco despalillado que tenía la demandante en su almacén valía mucho menos que lo que la demandante alega, o sea que valía alrededor de $10 quintal; que la pérdida no se le ha probado, ni se le ha reclamado el pago, y que la demanda es prematura.

Se celebró el juicio y se oyó la prueba; y la corte, en 28 de mayo de 1925, dictó, acompañada de una opinión, su

sentencia, declarando sin lugar la demanda, con costas a la demandante.

Contra esta sentencia se interpuso el presente recurso de apelación.

La parte apelante señala tres errores.

■ El primer señalamiento hace relación a la supuesta infracción del artículo 1223 del Código Civil. Se sostiene por la apelante que la cláusula de la póliza por virtud de la que la compañía aseguradora puede cancelar la dicha póliza sin otro requisito que el aviso al asegurado, es contraria al espíritu del citado texto legal, y es, por ello, ineficaz o nula. El artículo 1223 del Código Civil, dice:

"La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes."

La cláusula de la póliza a que la apelante se refiere, es la siguiente:

"Artículo 10.—El asegurado podrá en cualquier tiempo exigir la anulación del presente seguro, quedando entendido que la fracción de prima correspondiente al plazo vencido, calculada según la tarifa ordinaria de los seguros de corto plazo, quedará de propiedad de la Compañía. Esta tendrá el mismo derecho de cesar en cualquier época en su garantía, por medio de una simple notificación al asegurado, quien entonces podrá exigir la devolución de la fracción de prima correspondiente al tiempo que falte por correr desde la fecha de la anulación."

Hemos examinado con todo detenimiento el argumento de la apelante, que indudablemente, está presentado con habilidad, pero no es sólido.

El artículo 1223 de nuestro Código Civil no es otra cosa que una reproducción del 1256 del Código Civil Español. En alguna nación americana, ocurre lo mismo que en Puerto Rico; Honduras copió el precepto lo mismo que aparece en el Código Español, y no tenemos noticia de que haya sido enmendado. El sentido general de los códigos es éste; y en resumen, el principio no es otro que el del Derecho Ro-

mano, expresado en la ley 8, Título VII, Libro XLIV del Digesto, en estas palabras: *"Sub hac conditione 'si volam' nulla fit obligatio,"* o "No se contrae obligación bajo esta condición, 'si yo quiero.' "

La existencia y realidad de este principio, está de acuerdo con la naturaleza de la obligación contractual. En ésta, forzosa e inevitablemente, deben concurrir dos *voluntades,* que acuerdan y concuerdan para un fin de derecho. Cualquier estipulación, pacto o intención que haga desaparecer una de esas dos voluntades, destruye el acuerdo, y el contrato no nace.

Laurent ha expresado la situación jurídica, en casos como el de los artículos 1170 y 1174 del Código de Napoleón, con un sencillo ejemplo, y un axioma, que es así: "Si yo digo: 'me obligo si quiero,' como depende de mí impedir la obligación, no hay vínculo. Mas si me obligo estipulando el derecho de resolver la obligación a mi voluntad, quedo obligado, en tanto no manifiesta un propósito de resolver el contrato."

Y Mucius Scaévola, el tratadista español, dice así:

"Lo que según el artículo 1256 no puede quedar al arbitrio de uno de los contratantes es *la validez y el cumplimiento* de los contratos; conceptos ambos que se refieren a la esencia de la obligación, a su sustantividad, a su naturaleza, excluyendo así lo accidental. Lo que prohibe el legislador es la estipulación por virtud de la cual de la voluntad de un individuo dependa la existencia o inexistencia de la obligación, su nacimiento, pero no aquella otra determinativa de cómo y hasta cuándo ha de existir, con tal que viva." (Q. Mucius Scaévola, Comentarios al Código Civil, tomo 20, página 515).

Manresa, comentando el mismo artículo, dice:

"También el texto del artículo, refiriendo la prohibición al arbitrio de *uno* de los contratantes, demuestra que es perfectamente lícito dejar el cumplimiento, bajo la forma negativa de la rescisión, a la voluntad de cualquiera de las partes, caso frecuente en ciertos contratos (arrendamiento de servicios, suministro de energía eléctrica, etc.) porque en ese supuesto, ni se contraría el artículo,

ni se falta a la igualdad entre los contratantes, que quedan con las mismas facultades respecto del cumplimiento." (Manresa, Código Civil, tomo 8, página 627).

Existe un gran número de casos decididos por los tribunales de Estados Unidos, que se citan en 13 Corpus Juris, 606, como *Bour* v. *Kimball*, 46 Ill. A. 327; *A. Leschen, etc., Rope Co.,* v. *Patterson*, 130 La. 557, 58 So. 336; *McCullough's Lead Co.* v. *Strong*, 56 N. Y. 660; *U. S. Aluminum Co.* v. *Calvert Lith. Co.*, 49 Misc. 491, 97 N. Y. S. 1042, y otros, al exponer la ley en esta forma:

"Un contrato puede disponer que cesará a opción de una o de cualquiera de las partes, y tal estipulación, si se hace honradamente, será observada, a menos que sea contraria a la equidad y a una sana conciencia."

En el caso *Schwab* v. *Baremore*, 95 Minn. 295, 104 N. W. 10, se dijo por la corte:

"Es enteramente legal el que las partes en un contrato dispongan la rescisión o anulación del mismo, bien por un acuerdo posterior, o mediante la incorporación de cláusulas o condiciones con ese fin en el convenio original; y, así, pueden determinar y limitar los derechos y la responsabilidad de cada cual en caso de incumplimiento, y las cortes harán cumplir los contratos en cuanto a este particular lo mismo que a otros respectos, de acuerdo con los derechos de las partes según han sido fijados y limitados."

La lectura del artículo 1223 del Código Civil de Puerto Rico, da, por sí misma, el conocimiento de la verdadera teoría. El legislador no ha querido que *al arbitrio de una de las partes queden la validez y el cumplimiento* de la obligación contractual; es decir, lo que afecta a la vida, a la existencia de la obligación. Pero, en lo que se refiere a su resolución, puede pactarse, de acuerdo con el artículo 1222 del mismo código; y eso es lo que ocurre en el contrato en este caso, contrato que está perfeccionado por la intervención de consentimiento, objeto y causa, que es válido y eficaz, y obliga al cumplimiento; pero que se halla modali-

zado y condicionado, por la expresión de la voluntad de los otorgantes en cuanto a *cuándo* puede resolverse, y *cómo*, ya por una, ya por otra de las partes, que adquieren el derecho a resolver, no para una sola de ellas, sino para las dos y cada una.

La cláusula a que se refiere la parte apelante no deja al arbitrio de una de las partes la validez y el cumplimiento del contrato; éste es válido y eficaz al perfeccionarse, y tiene las necesarias condiciones para ser cumplido, y las partes se obligan a cumplirlo; y es cuanto en el contrato se requiere para que no exista en él oposición al precepto del artículo 1223 del Código Civil.

Si la interpretación que por la apelante se ofrece fuera correcta, quizá habría que sostener la nulidad del contrato en su totalidad, por faltar en el consentimiento el concurso de diversas· voluntades. No podría sostener tal teoría la misma parte que demandó para el cumplimiento del contrato, cumplimiento que, como primera condición, requiere la existencia de tal contrato, en condiciones de validez y exigibilidad.

No existe, pues, el primer error señalado.

En lo que toca al segundo error, la parte apelante sostiene que, de acuerdo con el artículo 51 del Código de Comercio, sólo tiene valor la correspondencia telegráfica cuando por las partes en el contrato se admitió previamente, y por escrito, tal medio, y con las condiciones que en dicho artículo se especifican.

El precepto citado sólo habla de la eficacia de la correspondencia telegráfica como medio de contratación. En el caso ante nosotros, el contrato se hizo en la forma corriente del seguro, esto es, por la póliza escrita. Y el telegrama sólo ha sido utilizado para avisar a la parte ahora apelante, de la cesación· del seguro. Leyendo la cláusula 10 de la póliza, encontramos que ese aviso puede ser de cualquier clase, oral, por carta, por telégrafo, y hasta la oral telefónica pudiera ser suficiente. A más de esto, del récord aparece

que no sólo se dió el aviso por telégrafo, sino que se dió personalmente a uno de los socios de la apelante.

No existe el segundo error señalado.

■ La apelante sostiene que según el artículo 1262 del Código Civil, la rescisión obliga a la devolución de las cosas que fueron objeto del contrato. Esta es una cuestión que se levanta por primera vez, ahora. Creemos que no hay justificación para proponerla, en este estado del procedimiento, y menos, cuando la parte que la propone, lejos de solicitar en la corte inferior la rescisión o las consecuencias de la misma, ha venido pidiendo el cumplimiento del contrato.

De todas formas, el pacto contenido en el artículo 10 de la póliza de seguro de que se trata, salva toda discusión y evita la duda, en este particular. Allí las partes han convenido en que cuando se utilice el derecho de resolver, baste la devolución de la fracción de prima correspondiente al tiempo que falte por correr desde la fecha de la anulación. Ese pacto, que forma parte integrante del contrato, es ley para las partes.

No estamos conformes con la apelante en cuanto al tercer error señalado.

*Debe confirmarse la sentencia apelada.*