# 2008 DTA 122

### TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE CAGUAS
### PANEL XI

PROVIDENCIA CRUZ SERRANO Y OTROS
Apelantes-Apelados

v.

ETHICON, DIVISION OF JOHNSON & JOHNSON PROFESIONAL CO. (PR), INC.
Apelada-Apelante

------------------------------------

PROVIDENCIA CRUZ SERRANO Y OTROS
Apelantes-Apelados

v.

ETHICON, DIVISION OF JOHNSON & JOHNSON PROFESSIONAL CO. (P.R.), INC.
Apelada-Apelante

Núms. Cons. KLAN-07-00385 / KLAN-07-00389

San Juan, Puerto Rico, a 20 de octubre de 2008

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Pabón Charneco

Pesante Martínez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparecen ante nos Providencia Cruz Serrano y otros, los apelantes-apelados o empleados, mediante recurso de apelación identificado alfanuméricamente, KLAN-07-00385, y nos solicitan la revocación parcial de una sentencia emitida por el Tribunal de Primera Instancia (TPI) Sala de Caguas (Hon. José M. Fernández Luis, Juez) el 18 de enero de 2007 y notificada el 24 de enero del mismo año, en un caso de reclamación salarial. Dicha parte plantea que el TPI incidió en la apreciación de la prueba y en la aplicación de las normas jurídicas locales y federales relacionadas a las controversias del presente caso. Mediante la referida sentencia, el TPI determinó que el tiempo estimado que invertían los apelantes-apelados en cumplir con las exigencias de control de calidad de Ethicon, Division of Johnson & Johnson Professional Co. P.R., Inc., (Ethicon o la empresa), en los procesos de *"gowning"* y *"degowning"* era un total de siete (7) minutos y seis (6) segundos diarios. Asimismo, indicó que ese tiempo invertido era *"de minimis"* o insustancial y aunque fuera principal y parte de la actividad patronal, no era compensable bajo los criterios federales. Por otro lado, determinó que para cumplir con las leyes vigentes en Puerto Rico era mandatario compensar a los apelantes-apelados cada día con la doble penalidad, el tiempo de tres (3) minutos y treinta y tres (33) segundos que se dedicaron en cumplir con dichos procesos, en cada período de tomar alimentos. En cuanto a la reclamación del pago del segundo período de tomar alimentos, la desestimó por no haberse presentado prueba alguna. Además, concedió el pago de costas, gastos, intereses al nueve punto veinticinco por ciento (9.25%) y honorarios de abogado en un dieciocho por ciento (18%).

Por otra parte, comparece Ethicon, en recurso de apelación, alfanuméricamente denominado KLAN-07-00389, y solicita la revocación parcial de la citada sentencia, por entender que el TPI concedió un remedio no solicitado, ni rogado por los apelantes-apelados violando su derecho al debido proceso de ley. Ethicon indica que el TPI le concedió a los empleados una compensación por una reclamación no incoada por éstos, consistente en ser resarcidos por un período de tiempo de tres (3) minutos con treinta y tres (33) segundos diarios, más el pago de una suma igual como penalidad, en el período de tomar alimentos.

Oportunamente, los apelantes-apelados presentaron una *Solicitud de Determinaciones de Hechos Adicionales,* el 5 de febrero de 2007, la cual fue declarada no ha lugar el 14 de febrero del mismo año. Además, dicha parte presentó una *Solicitud de Reconsideración*, el 8 de febrero de 2007, la que fue acogida y declarada no ha lugar, mediante resolución de 14 de febrero de 2007, notificada a las partes el 22 de febrero del mismo año, por lo que interrumpió el término para acudir ante nos.

Mediante resolución de 3 de abril de 2007, consolidamos ambos recursos por procurar la revisión de la misma sentencia.

Luego de estudiados los hechos, el derecho aplicable, además de la extensa transcripción, se modifica la sentencia apelada.

Los hechos pertinentes e incidencias procesales más importantes son las que expondremos a continuación.

**I**

Los apelantes-apelados presentaron *Querella* contra Ethicon bajo el procedimiento sumario de

reclamaciones laborales establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118-3132. Dicha querella fue presentada el 30 de abril de 1999; la misma fue enmendada a los únicos efectos de añadir a un querellante, Efraín Pérez Sánchez. El resto de los querellantes son los siguientes: Providencia Cruz Serrano, Juan A. Rodríguez Martínez, Luis E. Mercado Cintrón, Santos Figueroa Rivera, Levi Ríos Rivera, Juan Ares Conde, María Socorro Hernández, Carlos Torres Colón, Luis E. Roque Flores y María del C. Figueroa.

En síntesis, alegaron que a pesar de que el proceso de higiene, es decir, el vestirse *"gowning"* y el desvestirse *"degowning"*, así también como el lavado y secado de manos, eran requisitos de Ethicon para entrar al área de manufactura, ésta no reconocía como período de trabajo el tiempo dedicado a dichos procesos, por lo que reclamaron la paga de 30 minutos que, alegadamente, invertían diariamente en los mismos. Además, solicitaron el pago de un segundo período de alimentos para aquellos empleados que trabajaron turnos de doce horas de acuerdo con la Ley Núm. 379 de 15 de mayo de 1948, según enmendada.

El 2 de julio de 1999, Ethicon presentó *Contestación a la Querella Enmendada;* en lo pertinente, adujo que el tiempo incurrido por los apelantes-apelados al ponerse la indumentaria de trabajo encima de su ropa y el lavarse las manos, no constituía tiempo trabajado. Adujo, además, que en la alternativa había compensado a los empleados por el tiempo invertido y que la presente reclamación constituía un enriquecimiento injusto.

Por la pertinencia a las controversias presentadas, es necesario señalar que Ethicon es una empresa dedicada a la manufactura de agujas y suturas para uso en procedimientos quirúrgicos; su planta está localizada en San Lorenzo, Puerto Rico. El propósito del proceso de vestimenta y lavado realizado por los empleados, antes de entrar al área de manufactura, es minimizar el particulado y la contaminación en los productos quirúrgicos que allí se elaboran. Independientemente que los productos manufacturados en San Lorenzo se envíen a esterilizar a una planta de Ethicon en los Estados Unidos, se trata al máximo de minimizar el particulado con los procedimientos de vestimenta y lavado antes mencionados, y así se desprende de la transcripción.

La operación de Ethicon se encuentra regulada por la Federal and Drug Administration (FDA). Para cumplir con los requerimientos de la FDA, así como la reglamentación europea conocida como ISO 9000, Ethicon estableció áreas de ambiente controlado, conocidas como Controlled Manufacturing Environment (CME), además de establecer un procedimiento operativo para las prácticas del personal en dichas áreas. Tal procedimiento está recogido en el documento denominado como OP-600-106. Ethicon lo describe como un cuarto construido y mantenido para minimizar la introducción, generación y retención de partículas en el ambiente.

Por lo tanto, para asegurar la calidad del producto y el cumplimiento con la reglamentación federal, Ethicon requiere que los empleados y visitantes en los edificios donde se hacen las suturas, que vistan un uniforme antes de entrar al área de manufactura. Según se desprende de las determinaciones de hechos, Ethicon no establece o establecía un término máximo o mínimo de tiempo para ponerse o quitarse dicha indumentaria. Por otro lado, si los empleados deseaban utilizar las facilidades sanitarias, también tenían que realizar el *"degowning"*, y luego de regreso, el *"gowning"*. Lo mismo aplicaba en los períodos de tomar alimentos. Como parte de esa indumentaria, los empleados debían utilizar una bata de laboratorio de tela baja en pelusa o libre de pelusa, según se desprende del apéndice I de la OP-600-106. Además, debían utilizar un cubre zapatos o *"booties"*, un cubre cabellos y dependiendo el caso, un cubre barba, ambos desechables, asegurándose utilizar un espejo para que todo el cabello estuviera completamente contenido y que el *"gorro"* se extendiera sobre las orejas. Los empleados debían asegurarse de que todos los *"broches"* de la bata estuvieran cerrados. Asimismo, todos debían lavarse y secarse las manos; sin embargo, es importante señalar que **no** surge de la OP-600-106 cuánto tiempo los empleados debían invertir en este proceso de lavarse las manos.

A pesar que la OP-600-106 ha sido objeto de varias revisiones en cuanto al procedimiento, el fin es el

controlar el particulado en el área de manufactura. Asimismo, en todas las revisiones se ha mantenido que los empleados deben seguir este proceso antes de entrar al área de manufactura y al salir de la misma. Los empleados debían realizar el proceso de *"gowning"* y *"degowning"* dos veces cada uno, para un total de cuatro durante la jornada diaria de trabajo. El mismo se dividía en la siguiente forma: *"gowning"* antes de entrar al área de manufactura y antes de ponchar; *"degowning"* al salir del área de manufactura para tomar los alimentos, después de ponchar; *"gowning"* al regreso de tomar los alimentos y antes de ponchar; y *"degowning"* al salir del área de manufactura y después de ponchar.

Antes de entrar al área de manufactura, Ethicon proveía un área (locker room) para que los empleados y visitantes se colocaran y guardaran las prendas requeridas. En esa área, simultánea y conjuntamente, los empleados y supervisores llevaban a cabo los procesos de *"gowning"* y *"degowning"*, respectivamente. El número de empleados podía fluctuar; además podían concurrir con empleados del turno anterior o posterior. Cada empleado y/o visitante del edificio tenía un *"locker"* o casillero asignado con un candado de combinación de tres dígitos, donde colocaban la bata y el cubre calzado o *"booties"*, y sus pertenencias; las batas y el cubre calzado eran cambiados dos veces por semana. A la entrada del *"locker room"* habían receptáculos para tomar el cubre cabello y el cubre barba, según fuera el caso, ambos desechables. Luego de colocarse éstos, los empleados se dirigían a abrir el candado de combinación de sus casilleros para sacar la bata y el cubre calzado que debían colocarse posteriormente. Además, en dicha área habían bancos en varias hileras donde los empleados podían sentarse para colocarse los *"booties"*; otros lo hacían de pie, según surge de la transcripción. Además, habían varios espejos para que las personas pudieran observar si estaban utilizando la vestimenta requerida por Ethicon, adecuadamente.

Luego de vestir las piezas requeridas, los empleados caminaban al área de lavado de manos. Esa área estaba separada del área de vestimenta, por una puerta con un dispositivo que no permite que se abra si la puerta que da acceso del cuarto de lavado al área de manufactura (CME) está abierta. Ello podía conllevar varios segundos de espera al usuario. El área de lavado de manos contaba con cuatro lavamanos con cabida para diez a doce personas cada uno, para un total de cuarenta personas máximo que los utilizasen simultáneamente. Además, dicha área contaba con ocho secadores de mano y cuatro dispensadores de papel toalla, asimismo, varios receptáculos para tomar jabón antibacterial. Luego del lavado y secado de manos, los empleados caminaban hacia la puerta *"interlock"* que daba acceso al área de manufactura, donde cada empleado debía ponchar para luego comenzar a realizar su actividad principal de manufactura. El área contaba con alrededor de seis (6) *"ponchadores"*.

Como hecho particular, el marcador de la asistencia está dentro del área de manufactura, por lo que la persona ha tenido que realizar el proceso antes de registrar electrónicamente su asistencia.

Luego de varias incidencias procesales, se llevó a cabo el juicio, que comprendió varios días de audiencia, en los cuales, las partes presentaron amplia prueba documental y testifical.

El 18 de enero de 2007, el TPI emitió sentencia. En la misma indicó que el tiempo que le tomaba a cada empleado ponerse la ropa sufría variaciones de acuerdo a la persona. Luego de analizar los testimonios vertidos por los testigos, determinó que el *"gowning"* les tomaba alrededor de dos (2) minutos y veintisiete (27) segundos. Por otro lado, determinó que el *"degowning"* les tomaba un promedio de cincuenta y un (51) segundos y lavarse las manos un tiempo de quince (15) segundos. Además, hizo referencia a un estudio que se efectuó en Ethicon donde se tomó una muestra de cuarenta y nueve (49) empleados y el promedio del *"gowning"* fue de dos (2) minutos y veintisiete (27) segundos. Hizo mención de otro estudio en el que se tomaron ochocientas diecinueve (819) muestras, arrojando similares resultados. El TPI concluyó que el tiempo invertido por los apelantes-apelados en el proceso de ponerse y quitarse la vestimenta, lavarse y secarse las manos les tomaba alrededor de siete (7) minutos con seis (6) segundos diarios por empleado, además, que el mismo no era compensable por ser *"de minimis"*. Por otra parte, resolvió que de ese tiempo, tres (3) minutos y

treinta y tres (33) segundos, los empleados lo dedicaron a los susodichos procesos, durante su período de tomar alimentos, por lo que se les debía compensar ese tiempo invertido más la doble penalidad. Por otro lado, en relación a la segunda causa de acción, relacionada a la compensación por una segunda hora de alimentos, la desestimó por no haberse presentado prueba al respecto.

Oportunamente, los apelantes-apelados presentaron *Solicitud de Determinaciones de Hechos* y *Solicitud de Reconsideración;* ambas fueron declaradas no ha lugar, el 14 de febrero de 2007.

No conforme con la determinación del TPI, dicha parte presentó un recurso de apelación, KLAN-07-00385 en el que señaló los siguientes errores:

*"1. Erró el TPI al determinar que los querellantes invertían en el proceso de "gowning", "degowning", lavado y secado de manos, siete (7) minutos con seis (6) segundos diarios, cuando la prueba estableció que el tiempo era mayor.*

*2. Erró el TPI al recibir prueba testifical sobre un estudio de tiempo que no fue presentado ni admitido en evidencia.*

*3. Erró el TPI al aplicar erróneamente el "Portal to Portal Act" y la doctrina "de minimis".*

*4. Erró el TPI al aplicar la legislación federal en cuanto al tiempo trabajado para fines de quitarse y colocarse la vestimenta, y no aplicarla al tiempo trabajado durante el período de alimentos.*

*5. Erró el TPI al concederle a los querellantes la doble penalidad por el tiempo trabajado durante su período de alimentos en lugar de ordenar que se le pagara el doble de su salario y una suma igual por concepto de penalidad.*

*6. Erró el TPI al conceder honorarios de abogado en un 18%."*

Los apelantes-apelados plantearon que la prueba presentada demostró que el tiempo invertido por ellos en los procesos de *"gowning"* y *"degowning"* era uno mayor, es decir cuarenta (40) minutos máximo y veintiocho (28) minutos mínimo, diariamente. También alegaron que parecía que el tribunal no hubiese tomado en consideración los testimonios ofrecidos por éstos y sí hubiese considerado los testimonios vertidos por los testigos de Ethicon. Asimismo, indicaron que dichos testimonios coincidían, casualmente, con un estudio de tiempo efectuado por Ethicon, y que durante el juicio, se habían opuesto a que el mismo fuera presentado y admitido en evidencia. Adujeron, además, que el tribunal, así lo había determinado, es decir, que no lo había admitido. Pero a pesar de lo anterior, alegaron que el TPI reprodujo los hallazgos y promedios de tiempo resultantes de ese estudio, según lo declarado por la Ing. Deyneris Rodríguez, en la citada sentencia. Indican que dicho testimonio resultó ser idéntico a las conclusiones del estudio de tiempo que no fue admitido en evidencia.

Por otra parte, aducen que la ley aplicable era la Ley Núm. 379 de 15 de mayo de 1948, según enmendada y no el *"Portal to Portal Act"*, 29 U.S.C. secs. 251 *et seq* y la norma de *"de minimis"*. Indicaron que en Puerto Rico era un principio bien establecido el que las leyes del trabajo deben interpretarse liberalmente hacia la consecución de los fines para los cuales fueron promulgados, es decir, a favor de los trabajadores.

Asimismo, alegaron que el TPI no le concedió la doble penalidad y el doble de su salario por el tiempo trabajado durante el período de tomar alimentos y que no les concedió el treinta y tres por ciento (33%) en honorarios de abogado, según solicitado.

Por otra parte, Ethicon presentó su alegato y, en síntesis, alegó que el proceso de *"gowning"* y *"degowning"*

era uno sencillo, por lo que el mismo podía realizarse en pocos minutos, ya que los CME no eran cuartos estériles, porque Ethicon era una planta *"intermedia"* y no un *"finishing plant"* y los controles establecidos eran menores. Indicó que no requerían que los empleados se lavaran las manos por tres (3) minutos. Además, indicó que proveían a sus empleados una ventana de siete (7) minutos en la cual permitía a éstos entrar y salir del turno de trabajo, antes de la hora estipulada con paga; de esta manera, el proceso fluia sin que concurriera un gran volumen de empleados. Asimismo, mencionó los estudios de tiempo realizados en Ethicon, los que concluyeron que el tiempo aproximado que les tomaba a los empleados realizar dichos procesos era el siguiente: 2 minutos con 27 segundos para el *"gowning"* y 53 segundos para el *"degowning"*. Ethicon sostuvo que el testimonio de los estudios surge inicialmente, como producto del contrainterrogatorio del representante legal de los empleados, quien abrió las puertas para la admisión de dicha prueba. Sostuvo, además, que la apreciación de la prueba hecha por el TPI no era claramente errónea, no medió pasión, prejuicio o parcialidad por lo que debía mantenerse inalterada.

Por otro lado, Ethicon presentó otro recurso de apelación alfanuméricamente denominado KLAN-07-00389 en el que señaló los siguientes errores:

*"1. Erró el TPI al conceder compensación a los apelantes-apelados sin tener ante sí una controversia justiciable.*

*2. Erró el TPI al conceder a los apelantes-apelados por un reclamo que no fue parte de la querella, lesionando el derecho del debido proceso de ley apelado-apelante.*

*3. Erró el TPI al conceder un remedio que no fue alegado en la querella.*

*4. Erró el TPI al tomar conocimiento judicial de las determinaciones de hechos del caso Bejil v. Ethicon, Inc., 269 F. 3d 477 (5to Cir. 2001)."*

En dicho recurso, indicó que nunca se instó reclamación o acción alguna sobre el tiempo que, alegadamente, dedicaron los apelantes-apelados en el proceso de *"degowning"* a la salida al período de tomar alimentos y al *"gowning"*, al regreso de dicho período, así como el lavado de manos. Además, alegó que los apelantes-apelados se limitaron a incluir en la querella sólo dos causas de acción. La primera de éstas se redujo a reclamar el cobro de treinta (30) minutos diarios, por el tiempo que alegadamente, invertía cada uno de los apelantes-apelados en colocarse y quitarse la indumentaria requerida por Ethicon para entrar al área de manufactura. Indicaron, además, que no se hizo reclamo alguno por el primer período de tomar alimentos. La segunda causa de acción se limitaba al recobro de la compensación correspondiente al segundo período de tomar alimentos únicamente.

Por otro lado, Ethicon presentó un alegato suplementario, en el que señaló varios extractos de la transcripción de los que se desprendían que habían objetado para que no se enmendaran las alegaciones de la reclamación, en torno a la violación a la media hora de tomar alimentos.

Por su parte, los apelantes-apelados presentaron su alegato, que en realidad era un alegato suplementario del KLAN-07-00385, como bien determinamos mediante resolución de 22 de mayo de 2008. En dicha resolución, le concedimos el término de veinte (20) días, a dicha parte, para presentar alegato suplementario donde discutieran los errores planteados por Ethicon en el KLAN-07-00389. Dicha parte no cumplió con nuestra orden, por lo que Ethicon solicitó que el recurso se entendiera sometido sin oposición, por lo que procedemos a resolver.

## II

Todo lo concerniente a la jornada de trabajo en Puerto Rico, se rige principalmente por la Ley Núm. 379,

*supra*, 29 L.P.R.A. sec. 271. Dicha ley es uno de los estatutos protectores del trabajador; la misma limita a un máximo de ocho horas la jornada legal de trabajo en Puerto Rico y provee el pago de un tipo doble de salario para las horas trabajadas en exceso de la jornada legal. Además establece una causa de acción por horas extras trabajadas en exceso de la jornada regular de trabajo definida en dicho estatuto, así como por el tiempo trabajado durante el período señalado para tomar alimentos, consistente en las cantidades no pagadas, más de una suma igual por concepto de liquidación por daños y perjuicios. *Almodóvar v. Margo Farms del Caribe, Inc.*, 148 D.P.R. 103 (1999).

La Ley Núm. 379, *supra*, rige en Puerto Rico aun para aquellas empresas cubiertas por la Ley Federal de Normas Razonables del Trabajo, Fair Labor Standards Act (FLSA), 29 U.S.C. sec. 201 *et seq*, a tenor con la regla de mayor beneficio establecida por esta última en su Sección 18, ya que sus disposiciones son más favorables en cuanto a la jornada semanal, que lo que dispone al respecto la legislación federal. Además, en cuanto a las otras condiciones de trabajo que se establecen en la misma, tales como horas extras diarias, días de descanso y período de tomar alimentos, en vista de que la FLSA guarda silencio sobre las mismas, rige lo entonces establecido en la mencionada Ley Núm. 379, *supra*. R. Delgado Zayas, *Apuntes para el estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño*, San Juan, 2005, pág. 6. Véase, además, *Chabrán v. Bull Insular Line*, 69 D.P.R. 269 (1948). Sin embargo, en *Vega v. Yiyi Motors*, 146 D.P.R 373 (1998), cambia esta interpretación para las horas sobre 40 a la semana. El Tribunal Supremo resolvió que los empleados exentos por la ley federal de las disposiciones de horas extras sobre 40 a la semana, están exentos también de éstas, bajo la ley de Puerto Rico.

La FLSA dispone en su Sección 18 que con relación a salarios mínimos y jornada de trabajo (40 horas) así como para el trabajo en exceso de ésta, Puerto Rico (y los estados) pueden legislar, y las disposiciones de ley de Puerto Rico prevalecerán sobre las de la ley federal en todo aquello que sea más favorable al empleado. Delgado Zayas, *op cit.*, págs. 16-17.

Por otro lado, la Ley Núm. 180 de 27 de julio de 1998, conocida como Ley de Salario Mínimo de Puerto Rico, 29 L.P.R.A. Sec. 245 *et seq.*, extendió el salario mínimo federal a los trabajadores en Puerto Rico.

El Artículo 2 de la referida disposición legal dispone lo siguiente:

*"El salario mínimo federal fijado por la Ley de Normas Razonables del Trabajo (en inglés "Fair Labor Standards Act"), aprobada por el Congreso de los Estados Unidos de América el 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, aplicará automáticamente en Puerto Rico a los trabajadores cobijados por la Ley Federal.*

*Al aplicarse el salario mínimo federal, se reconocerá lo dispuesto en la legislación y reglamentación federal referente a **cómo se paga el salario mínimo, lo que son horas de trabajo**, cuáles empleados y ocupaciones están exentas del salario mínimo, y qué constituye horas o tiempo de trabajo."* (Énfasis nuestro)

Al igual que la Ley Núm. 379, *supra*, le impone responsabilidad al patrono de compensar al empleado, tanto por el trabajo que éste exija, como por el que tolere o permita. Artículo 5, Ley Núm. 379, *supra*. Sin embargo, en esta legislación no se explica con precisión qué constituye tiempo trabajado. Tampoco existe jurisprudencia de nuestros tribunales al respecto.

En la jurisdicción federal, la FLSA (29 U.S.C. sec. 201 *et seq.)*, aprobada en 1938, *supra*, establece el derecho de todo empleado a que se le compense de manera justa y equitativa el tiempo trabajado. El propósito primordial de dicha ley federal es garantizar a los empleados unos estándares mínimos de vida necesarios para su salud, eficacia y bienestar. *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843 (8th Cir. 1975).

Bajo el FLSA existe una amplia definición de horas trabajadas por un empleado que incluye: *"all hours that an employee is suffered or permitted to work for the employer. Véase 29 U.S.C. sec. 203 (g).*

*Al aplicarse el salario mínimo federal, se reconocerá lo dispuesto en la legislación y reglamentación federal referente a cómo se paga el salario mínimo, __lo que son horas de trabajo__, cuáles empleados y ocupaciones están exentas del salario mínimo, y __qué constituye horas o tiempo de trabajo__."* (Énfasis nuestro)

Por tanto, con su aprobación incorporó como parte de nuestro derecho sustantivo lo dispuesto por la FLSA, según enmendada por el *"Portal to Portal Act"*, y su reglamentación, para todo patrono, fuese una empresa cubierta o no por el FLSA.

Por lo anterior, y por tratarse el caso de marras sobre qué se considera *"tiempo trabajado"* por un empleado y porque las leyes de Puerto Rico no tienen disposiciones específicas, son de aplicación las disposiciones estatutarias y reglamentarias federales.

En 1947, el Congreso de los Estados Unidos aprobó legislación donde se trata en especial dicho concepto. La Ley conocida como *"Portal to Portal Act"*, introdujo cambios o modificaciones sobre el particular. Uno de los propósitos de esta legislación fue establecer de forma más específica y restrictiva lo que se considera tiempo trabajado por un empleado y, por lo tanto, compensable al amparo de la ley.

Conforme con dicha legislación federal, como norma general, un patrono no tiene que pagar compensación a un empleado por las siguientes actividades, 29 U.S.C. sec. 254:

*"(a) Activities not compensable*

*...no employer shall be subject to any liability or punishment under the Fair Labor Standards Act 1938, as amend (29 U.S.C. 201 et seq.)...on account of the failure of such employer to pay an employee minimum wages or to pay an employee overtime compensation, for or on account of any of the following activities of such employee...*

*(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and*

*(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."*

Bajo este estatuto no se provee derecho al trabajador a recibir compensación por actividades preliminares o posteriores a la actividad principal de trabajo.

Sin embargo, en *Steiner v. Mitchell,* 350 U.S. 247 (1956), un grupo de trabajadores de una compañía manufacturera de baterías tenían que seguir un procedimiento riguroso de higiene y cambiarse de ropa debido a que estaban expuestos a un material cáustico y tóxico. Los empleados reclamaron compensación por el tiempo que empleaban en asearse y cambiarse de ropa. El patrono se opuso aduciendo que conforme al *"Portal to Portal Act"* dicha actividad era *"preliminary o postliminary"* al trabajo y no era compensable. El Tribunal Supremo de los Estados Unidos resolvió lo siguiente: *"Activities performed either before or after the regular work shift, on or off the production line, are compensable under the Portal to Portal provisions of the Fair Labor Standards Act, __if those activities are an integral and indispensable part of the principal activities__ for which covered workmen are employed and are not specifically excluded by sec.4 (A)(1) p. 256".* (Énfasis nuestro)

En dicho caso, se estableció que el aseo y cambio de ropa era un requisito de trabajo impuesto por el patrono; esas actividades eran necesarias debido a la naturaleza del trabajo realizado, por lo que eran compensables.

Para poner en vigor la citada *"Portal to Portal Act"*, el Departamento del Trabajo Federal promulgó una serie de reglas o normas, dirigidas, por un lado, a evitar que los patronos tengan enriquecimiento injusto con el trabajo no compensado de los empleados, y por otro lado, que los empleados reciban una justa compensación por el tiempo trabajado.

El llamado *"Code of Federal Regulations"* (CFR), en lo pertinente, a cómo se registra el tiempo trabajado, 29 CFR 785.47, dispone lo siguiente: *"In recording working time under the Act, __insubstantial or insignificant__ __periods of time beyond the scheduled working hours, which cannot as practical administrative matter be__ __precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de__ __minimis.__ Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities."* (Énfasis nuestro)

Por lo tanto, se ha resuelto que aunque dichas actividades preliminares o posteriores sean parte integral de la actividad principal y parte de la actividad patronal, no serán compensables si las mismas constituyen un tiempo insustancial o *"de minimis"*. *Lindow v. U.S.,* 738 F. 2d 1057 (9th Cir. 1984).

Se ha resuelto que diez (10) minutos o menos dedicados en actividades preliminares al comienzo del trabajo o en actividades posteriores a éste, no son compensables bajo la norma antes mencionada. *Nardone v. General Motors, Inc.,* 207 F. Supp. 336 (1962).

De lo anterior, se desprende que la doctrina *"de minimis"* establece que períodos de tiempo trabajados fuera de la jornada regular de trabajo, los cuales por razones prácticas de administración no son registrados en el horario de trabajo de un empleado, pueden ser obviados en la consideración del pago de horas trabajadas, si son insignificantes o inciertas. 29 C.F.R. 785.47

El tiempo a compensar es el tiempo razonable que tome la actividad. Ello, independiente a lo que le tome a cada persona hacer esa gestión. *Anderson v. Mt. Clemens Pottery Co., supra.*

**Período de Tomar Alimentos**

Según el Artículo 14 de la Ley Núm. 379, *supra,* los períodos de tomar alimentos, como norma general, son de una hora. Presupone el período en cuestión una interrupción en la prestación de los servicios que efectúa el empleado, y que éste haga uso libremente de dicho tiempo, sin que durante el mismo tenga que prestar atención, aunque sea mínima a las obligaciones de su empleo. *Pamblanco v. Union Carbide,* 90 D.P.R. 712 (1964). En este caso se determinó, además, que dicho período no constituye una hora extra y que un obrero que trabaja durante la hora de almuerzo tiene derecho a recibir doble compensación por trabajar dicha hora, independientemente de la obligación del patrono de pagar doble compensación por cualquier hora trabajada en exceso de la jornada de ocho horas en ese día. Véase *Concreto Mixto v. Tribunal Superior,* 92 D.P.R. 808 (1965).

El derecho de paga doble por el trabajo realizado en el período de alimentos es independiente del derecho a recibir paga extraordinaria por el trabajo realizado en exceso de ocho horas en ese día. *Pamblanco v. Union Carbide, supra.*

El período de tomar alimentos puede reducirse a menos de una hora. Para efectuar dicha reducción, el

trabajador debe consentir a la reducción y ésta debe ser para su beneficio; además, la reducción continúa vigente indefinidamente, salvo que transcurrido un año, el empleado deje sin efecto su consentimiento. Una enmienda a la citada ley en 1995, eliminó el requisito de la aprobación de la reducción por el Secretario del Trabajo y Recursos Humanos. Delgado Zayas, *op cit.*, pág. 64.

En *Jiménez v. General*, res. el 19 de enero de 2007, **2007 J.T.S. 18**, el Tribunal Supremo resolvió que no es de aplicación la doctrina federal conocida como *"de minimis"* al período de tomar alimentos; indican que ese derecho y las normas legales que lo regulan son criatura exclusiva de la Ley Núm. 379, *supra*.

## Apreciación de la Prueba

Es de común conocimiento que los tribunales apelativos no debemos sustituir el criterio del juzgador, quien tuvo la oportunidad de ver declarar los testigos, apreciar su *demeanor* y dirimir credibilidad. *Trinidad v. Chade*, 153 D.P.R. 280 (2001).

La apreciación de la prueba realizada por el juzgador de primera instancia merece deferencia por los tribunales apelativos; sus determinaciones deben ser respetadas, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. *Pérez v. Morales*, res. el 28 de septiembre de 2007, **2007 J.T.S. 176**.

Por otra parte, los tribunales revisores tienen amplia discreción en la apreciación de la prueba documental presentada en primera instancia pudiendo, inclusive, adoptar su propio criterio y hasta descartarla, aunque resulte técnicamente correcta. *Rivera v. Pan Pepín*, 161 D.P.R. 681 (2004); *Mun. de Loíza v. Sucns. Suárez et al.*, 154 D.P.R. 333 (2001). Esto es así, ya que en cuanto a la apreciación de prueba documental, el tribunal revisor está en la misma posición que el tribunal de primera instancia. *Álvarez v. Rivera*, res. el 17 de junio de 2005, **2005 J.T.S. 90**; *Sepúlveda v. Departamento de Salud*, 145 D.P.R. 560, 573 (1998).

Reiteradamente hemos resuelto que los tribunales deben conceder lo que en derecho proceda, aunque ello no haya sido perfectamente solicitado. Los foros judiciales debemos hacer todo lo que esté a nuestro alcance para que los casos se fallen en sus méritos. *Soto López v. Colón*, 143 D.P.R. 282, 291 (1997). No se debe desestimar una acción judicial, salvo que, a la luz de todos los hechos expuestos, el reclamante carezca de derecho a remedio alguno. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497 (1994).

## Admisibilidad de Evidencia

La Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, dispone que sólo se dejará sin efecto una determinación errónea de admisión de evidencia si dicha determinación fue objetada oportuna y correctamente por la parte perjudicada por la admisión, y si ésta fue factor decisivo o sustancial en la sentencia cuya revocación se haya solicitado. *Hernández v. Padilla*, 142 D.P.R. 989, 995 (1997). A estos efectos, dispone la Regla 4 de Evidencia:

*"Regla 4. Efecto de error en la admisión de evidencia*

*No se dejará sin efecto una determinación de admisión de evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:*

*(1) La evidencia fue erróneamente admitida a pesar de la oportunidad y correcta objeción de la parte perjudicada por la admisión, y*

*(2) el tribunal que considera el efecto de la admisión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita."*

Es un principio general del Derecho Probatorio que la prueba que se presente y no sea objetada, se admite. *Vélez v. Boy Scouts of America,* 145 D.P.R. 528 (1998); *Pueblo v. Millán,* 110 D.P.R. 171 (1980). Si una prueba que se ha presentado en varias ocasiones durante el juicio sólo es objetada en una de sus instancias y no en todas, se entiende que las veces que no se objetó constituye una renuncia al planteamiento, aunque se haya objetado correctamente en una de las ocasiones. *Bradley v. Southern Pac,* 613 F. 2d 1385 (1980); R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño,* 2da. ed, 2005, pág. 92.

Por lo tanto, la exclusión o la admisión errónea de evidencia no conlleva la revocación de un dictamen, cuando tal exclusión o admisión no es factor decisivo o sustancial en el resultado del pleito. Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV. Sin embargo, cuando la exclusión o la admisión errónea es de tal envergadura que el tribunal considera que ésta fue un factor decisivo o sustancial en la sentencia, procede la revocación y concesión del remedio solicitado. *Pueblo v. Martínez Solís,* 128 D.P.R. 135 (1991). Véase, además, *Hernández v. Padilla, supra.* Para determinar si un error en materia de evidencia justifica revocar una sentencia, hay que determinar si, de no haberse cometido el error, probablemente el resultado hubiera sido diferente. *Pueblo v. Mangual Hernández,* 111 D.P.R. 136, 145 (1981).

## Honorarios de Abogado en Reclamaciones Laborales

La reclamación laboral en el caso de autos se tramitó bajo el procedimiento de querella establecido en la Ley Núm. 379, *supra,* y Ley Núm. 2, *supra.*

Con el propósito de salvaguardar los derechos de los trabajadores y de facilitar sus reclamaciones frente al patrono, el Art. 2 de la Ley Núm. 402 de 12 de mayo de 1950 prescribe que, al palio de cualquier reclamación laboral en la que prevalezca el obrero, es imperativo imponer honorarios de abogado a su favor. A tales efectos, este artículo dispone, en lo pertinente, que:

*"En todo caso radicado ante los tribunales de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado, si éste no fuere uno de los abogados del Departamento del Trabajo y Recursos Humanos."* 32 L.P.R.A. sec. 3115.

La idea de dicha medida es proteger a los trabajadores que ven la necesidad de instar una reclamación al amparo de cualquier legislación laboral para que no vean reducida, a base de un porcentaje, la compensación de que son finalmente acreedores. 32 L.P.R.A. sec. 3114. A tales efectos, el Art. 13 de la citada Ley Núm. 379, *supra,* dispone en lo pertinente:

*"Todo empleado que reciba una compensación menor que la fijada en las secs. 271 a 288 de este título para horas regulares y horas extras de trabajo o para el período señalado para tomar los alimentos, tendrá derecho recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogado del procedimiento."* 29 L.P.R.A. sec. 282. (Énfasis nuestro)

A su vez, la Sec. 15 de la mencionada Ley Núm. 2, *supra,* establece lo relativo al pago de honorarios de abogado. En lo pertinente, dicho precepto dispone:

*"...En todos los casos en que se dictare sentencia a favor de la parte querellante, si ésta compareciere representada por un abogado particular, se condenará al querellado al pago de honorarios de abogado."* 32 L. P.R.A. sec. 3132.

Conforme a lo anterior, se estableció en la misma legislación que en todos los casos en que se dicte sentencia en favor de la parte querellante, si ésta compareció representada por abogado particular, se condenará al querellado al pago de honorarios de abogado. Nótese que ninguna de estas leyes requiere de una determinación previa de temeridad.

Sin embargo, dichos estatutos no regulan la cantidad a ser concedida al abogado del empleado por su labor en la acción de reclamación de horas para la toma de alimentos no disfrutadas o reclamación del pago de horas extras. Por lo anterior, resulta en que tal cantidad de dinero en honorarios de abogado sea un asunto discrecional del tribunal ante el cual se llevó el caso.

En el caso *López Vicil v. ITT Intermedia, Inc.,* 143 D.P.R. 574 (1997), en ausencia de una disposición legal que cuantificara la razonabilidad de los honorarios de abogado en las reclamaciones presentadas al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, el Tribunal Supremo resolvió que, de ordinario, la cuantía que podrá recibir un abogado de un trabajador victorioso en una reclamación bajo dicho estatuto sería del veinticinco por ciento (25%) de la indemnización base concedida al trabajador.

En dicho caso, el Tribunal Supremo expresó que en aquellas situaciones en que un abogado estimara que el esfuerzo realizado, el impacto o resultado excepcional del caso -o el haber enfrentado una defensa hostil- justificara el recibir una cuantía mayor en concepto de honorarios, éste podía solicitar al tribunal su visto bueno para cobrar una tarifa a base de las horas trabajadas. En este caso, el abogado vendrá obligado a presentar un memorando juramentado en el que detalle las horas trabajadas y la tarifa que ha de cobrarse por hora. De esta forma, el tribunal podrá evaluar su razonabilidad. *López Vicil v. ITT Intermedia, Inc., supra.*

El abogado que solicite al tribunal autorización para cobrar una tarifa en concepto de honorarios a base de las trabajadas, deberá detallar en su memorando lo siguiente: 1) las horas trabajadas y la labor realizada, y 2) la tarifa que cobra por hora en este tipo de caso. En cuanto a lo primero, el abogado desglosará el tiempo invertido en el caso y especificará las tareas realizadas. Con respecto a lo segundo, el abogado justificará su tarifa de acuerdo con su experiencia, preparación y cuánto cobra tradicionalmente en este tipo de caso. *López Vicil v. ITT Intermedia, Inc., supra.*

El Tribunal Supremo también dispuso a la página 584, el procedimiento que debía seguir el tribunal de instancia al aquilatar la solicitud: *"...el tribunal de instancia tendrá discreción para aceptar o modificar la suma de honorarios reclamada en el memorando, pero siempre deberá consignar por escrito sus razones para llegar a determinada suma. Sólo de esta manera ese cálculo podrá ser revisable y se evitarán abusos de discreción".*

Por otro lado, la Ley Núm. 80 de 30 de junio de 1976 (29 L.P.R.A. sec. 185a *et seq.*), sobre despido injustificado, establece que cuando el tribunal crea que el despido fue efectuado sin justa causa, éste ordenará al patrono depositar una suma para honorarios de abogado, no menor del quince por ciento (15%) del total de la compensación del trabajador. 29 L.P.R.A. sec. 185k(b). El Tribunal Supremo aclaró en *S.L.G. Afanador v. Roger Electric Co, Inc.,* 156 D.P.R. 651 (2002), escolio 13, que en ausencia de una disposición legal que cuantifique numéricamente la razonabilidad de los honorarios en las reclamaciones presentadas al amparo de la legislación laboral, la cuantía que le corresponde al abogado del demandante es equivalente al veinte y cinco por ciento (25%) de la indemnización básica que finalmente se determine; cualquier aumento en exceso de dicha cifra, debe ser justificado mediante memorando jurado.

Expuesta la norma jurídica aplicable, procedemos a resolver las controversias planteadas por las partes.

### III
Nos corresponde dirimir en primer lugar si la determinación del TPI de siete (7) minutos y seis (6)

segundos, en relación al tiempo que invertían los apelantes-apelados en los procesos de "*gowning*" y "*degowning*", lavado y secado de manos, fue correcta. Arguyen los apelantes-apelados que la prueba presentada establecía que era un tiempo mayor. Dicho error cuestiona la apreciación de la prueba basada en la credibilidad de los testigos que el TPI tuvo ante sí.

Luego de examinado los testimonios de los apelantes-apelados en la transcripción, entendemos que dicho error no se cometió. Veamos porqué.

Los apelantes-apelados presentaron querella bajo la Ley Núm. 2, *supra,* y reclamaron la compensación de 30 minutos diarios de tiempo que, alegadamente, les tomaba el proceso de higiene (lavado y secado de manos), el ponerse y quitarse la indumentaria requerida por su patrono, ya que éste no reconocía como tiempo trabajado.

Los apelantes-apelados declararon en el juicio y explicaron detalladamente, cómo realizaban diariamente los procesos de "*gowning*" y "*degowning*", y cúanto tiempo les tomaba a cada uno, aproximadamente, realizar los mismos.

Por su parte, Ethicon adujo que el proceso de vestir la indumentaria en el área de "*lockers*" fluia sin mayor contratiempo; ni el "*gowning*" ni el "*degowning*" requerían concentración o esfuerzo. Véase págs. 21-22 del alegato de Ethicon.

La Ing. Deinerys Rodríguez, testigo de Ethicon, declaró que el proceso del "*gowning*" era bien informal. Citamos lo siguiente de las págs. 1897 y 1902 de la transcripción:

*"20-... Básicamente es un proceso bien*

*21- informal.*

*1- ...El procedimiento de gowning es meramente un*

*2- procedimiento que se trajo a San Lorenzo, primero para proteger a*

*3- la persona, pero en términos de calidad no me afecta el no tener*

*4- el procedimiento de gowning...".*

*Además, indicó que en ningún procedimiento en Ethicon exigía que los empleados se lavaran las manos por tres (3) minutos. En lo pertinente citamos lo siguiente de la pág. 1899:*

*"3- Ningún procedimiento en Ethicon exige que se laven las manos por 7- tres (3) minutos.*

*8- P-¿Ninguno?*

*9- R-Solamente exige que se laven las manos.*

*10- P-¿Y el OP-600-106 es qué procedimiento?*

*11- R-El procedimiento donde está el procedimiento de*

*12- gowning.*

*P- Okay. ¿Qué procedimiento en Ethicon exige, doña*

*Deinerys, que usted al lavarse las manos se tenga que restregar*

*en los dedos y debajo de las uñas?*

*R-Ninguno.*

*...*

*...*

*...sabe, los—lo escucho absurdo. Porque el*

*procedimiento meramente te dice que te laves las manos y ya."*

Además, alegó que Ethicon no supervisaba, regulaba o limitaba el tiempo que los empleados utilizaban para realizar el *"gowning"*.

Por otra parte, a preguntas de la Lcda. Antongiorgi, el Sr. Oscar Díaz declaró que no era correcto de que a los apelantes-apelados les tomara de ocho (8) a (12) minutos, el proceso de *"gowning"*. En cuanto al *"degowning"*, declaró que era *"imposible"* que les tomara de seis (6) a (8) minutos, ya que era un proceso más sencillo. Véase Transcripción, págs. 2197- 2198.

Surge del testimonio de la Ing. Deinerys Rodríguez lo siguiente, transcripción, pág. 1931:

*"R-Bueno, nosotros tenemos una certificación de ISO-9000*

*9001, que a pesar de que anteriormente se hacía en la Compañía*

*quisieron mantener el proceso de gowning como parte de esta*

*certificación...*

*P- ¿Eso es para vender el producto en Europa?*

*R- Es correcto.*

*P-¿Y son unos requerimientos que son rigurosos, verdad*

*que sí?*

*R- Sí."*

La parte apelada-apelante entiende que si el tiempo total (las cuatro veces al día) que le debe tomar a un empleado de Ethicon el ponerse y quitarse la indumentaria debe estimarse en menos de 10 minutos diarios, el tiempo debe ser considerado *"de minimis"* y, por ende, no debe compensarse. *Lindow v. U.S., supra.* A continuación expondremos, en síntesis, el tiempo que, alegadamente, invertían diariamente algunos de los apelantes-apelados en dichos procesos, según se desprende de los testimonios que surgen de la transcripción:

| "Nombre del Empleado | Tiempo aproximado "Gowning" | Tiempo aproximado "Degowning" |
|---|---|---|
| 1.Providencia Cruz (44) | 10 a 12 minutos | 8 a 10 minutos |
| 2. Juan Ares (29) | 9 a 10 minutos | 6 a 8 minutos |
| 3. Efraín Pérez (33) | 8 a 10 minutos | 6 a 8 minutos |
| 4. Juan A. Rodríguez (40) | 7 a 10 minutos | 7 a 10 minutos |
| 5. Carlos Torres (48) | 8 a 12 minutos | 8 a 12 minutos |
| 6. Luis E. Mercado (39) | 8 minutos | 6 a 8 minutos |
| 7. Abraham Pacheco (supervisor) | 1 a 1.5 minutos | 40 a 50 segundos |
| 8. Deinerys Rodríguez (ingeniera y supervisora) (25) | 1.10 minutos | Menos de 1 minuto |
| 9. Oscar Díaz (supervisor) | 1.5 minutos | 52 segundos" |

Luego de analizar los testimonios de los apelantes-apelados y de los testigos de Ethicon, entendemos que, por un lado, los testimonios de los primeros son exagerados y minuciosos; y por el otro, los testimonios de los segundos, le restan importancia al requisito de los procesos de *"gowning"* y *"degowning"* exigidos por la compañía para cumplir con la certificación de ISO9000, 9001 para poder vender los productos en Europa y cumplir los requerimientos de la FDA.

Por lo tanto, sostenemos la determinación del TPI de que el tiempo que les tomaba a los apelantes-apelados en realizar el *"gowning"*, el *"degowning"* y el lavado de manos era de siete (7) minutos y seis (6) segundos, dicho tiempo es uno razonable y promedio, luego de evaluar los testimonios. Por lo tanto, concluimos que las determinaciones hechas por el TPI están apoyadas en la prueba documental y testifical presentada.

Es norma altamente conocida, que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y/o que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Pueblo v. Irrizary,* 156 D.P.R. 780 (2002). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.,* 148 D.P.R. 420 (1999).

El segundo error cuestiona la admisibilidad de la prueba testifical relacionada a unos estudios de tiempo realizados por Ethicon, no presentados y admitidos en evidencia. Este error no se cometió. Veamos porqué.

Los apelantes-apelados alegan que los susodichos estudios de tiempo que fueron realizados en Ethicon para determinar el tiempo que les tomaba a éstos realizar los procesos de *"gowning"* y *"degowning"*, no fueron presentados ni admitidos en evidencia; sin embargo, aducen que el TPI recogió los hallazgos de los mismos, en sus determinaciones de hechos. Lo anterior, tomando en consideración las declaraciones de varios testigos de la compañía. Dicha parte argumenta, además, que durante la vista del caso se opusieron a que se presentara y admitiera en evidencia dicho estudio, el que fue realizado por la parte apelada-apelante y que el tribunal la declaró ha lugar.

Del *Informe Sobre Conferencia Preliminar Entre Abogados* no surge que la Ing. Deinerys Rodríguez o el Sr. Oscar Díaz fueran a declarar sobre algún Estudio de Tiempo. Véase KLAN07-0389 apéndice, págs. 48-73.

Hemos analizado la parte de la transcripción pertinente a este planteamiento y expondremos a continuación extractos de los testimonios que son relevantes:

**A. Testimonio de la Ing. Deinerys Rodríguez, supervisora:**

Transcripción, pág. 1889:

*"8- Honorable Juez Fernández Luis: ...que tiene usted*

*9- ahora para presentar esa prueba, hay una objeción de la otra*

*10- parte. Y si-y yo no voy a permitir que se introduzca ese*

*11- Estudio en evidencia. Y, obviamente, si no permito que*

*12- introduzca el Estudio en evidencia, porque no está*

*13- informado, tampoco le puedo permitir preguntas porque sería*

*14- lo mismo...*

*15- Lcda. Antongiorgi Jordán: Juez, este...*

*16- Honorable Juez Fernández Luis: Sería porque...No, no*

*17- lo introduzco, pero lo leo aquí y ya está."*

Transcripción, pág. 1891:

*"12- Honorable Juez Fernández Luis: Así que, Licenciada, lo*

*13- que yo le voy a decir es lo siguiente. Si—hágale*

*14- preguntas sobre el tiempo que le toma a ella y de su*

*15- experiencia, pero dejando a un lado lo del Estudio porque*

*16- hay una objeción.*

*17- Lcda. Antongiorgi Jordán: Okay. Su señoría.*

*18- Honorable Juez Fernández Luis: Y yo no lo voy a*

*19- permitir. ¿Bien?*

*20- Lcda. Antongiorgi Jordán: Muy bien. Su señoría..."*

*21- Honorable Juez Fernández Luis: Y resolvemos eso ya."*

Transcripción, pág. 1892:

*"11- ...hay una objeción y la estoy dando*

*12- con lugar."*

Transcripción, pág. 2062:

*"10- ...y el compañero llega a la reunión que ella*

*11- sostiene con Ángel Serrano. Y le pregunta de qué hablaron.*

*12- y ella dice "hablamos...*

*13- Honorable Juez Fernández Luis: Si.*

*14- Lcda. Antongiorgi Jordán: del Estudio de Tiempo".*

*15- y el compañero ahí decide que no va a hacer más ninguna*

*16- pregunta. Pero Juez, en el momento en que él le pregunta*

*17- de qué hablaron, ya ahí se abre la puerta para yo indagar*

*18- sobre qué se dijo en la conversación..*

*19-...*

*20- Lcda.Antongiorgi Jordán: Ya el compañero tenía la*

*21- advertencia del Tribunal en ese momento de que si él entraba*

*22- a ese tema, se abría la puerta para hablar del Estudio de*

*23- tiempo."*

Transcripción, pág. 2095:

*"13- Honorable Juez Fernández Luis: Licenciado, cuando uno*

*14- le pregunta a alguien cuál fue una conversación, pues hay*

*15- un riesgo."*

**B. Testimonio del Sr. Oscar Díaz, supervisor:**

"En síntesis, el Sr. Oscar Díaz declaró que el proceso del "gowning" no requería esfuerzo alguno. Dicho proceso le tomaba aproximadamente un minuto y medio." Véase Transcripción, págs. 2144 y 2150.

Por otro lado, declaró en relación al segundo estudio de tiempo realizado en Ethicon. Explicó que participó tomando tiempos, entrando y validando la data. Indicó que se tomaron ochocientas diecinueve (819) muestras, al azar y se midió el tiempo que les tomaba realizar el proceso de "*gowning*" y el proceso de "*degowning*". Declaró, además, que el resultado de dicho estudio fue que el proceso completo de "*gowning*" y "*degowning*" fue de seis (6) minutos y cuarenta y cinco (45) segundos. Esto incluía el "*gowning*" entrando, el "*degowning*" saliendo al "*break*", el "*gowning*" entrando de "*break*" y "*degowning*" saliendo. Véase Transcripción, págs. 2166, 2168, 2177.

Particularmente, declaró que el "*gowning*" en la mañana les tomaba dos (2) minutos y veintisiete (27) segundos. El "*degowning*" al salir en el almuerzo era cincuenta y tres (53) segundos.

En cuanto a la confiabilidad del estudio, declaró que participó verificando que los datos que se habían tomado fueran los mismos datos que se entraron a la computadora, donde serían computados. Indicó que se utilizó la fórmula del Método Barnes que era uno muy conocido en la industria en relación a estudios de tiempo. Véase Transcripción, págs. 2182- 2183.

Por otra parte, a preguntas de la Lcda. Antongiorgi, el Sr. Oscar Díaz declaró que no era correcto de que a los apelantes-apelados les tomara de ocho (8) a (12) minutos, el proceso de "*gowning*". En cuanto al "*degowning*", declaró que era "*imposible*" que les tomara de seis (6) a (8) minutos, ya que era un proceso más sencillo. Véase Transcripción, págs. 2197- 2198.

Ethicon alega que el testimonio sobre los estudios realizados surge inicialmente como producto del contrainterrogatorio del Lcdo. Mondríguez, abogado de los apelantes, que le hiciera a la Ing. Rodríguez. Dicha parte indica que durante el contrainterrogatorio, el Lcdo. Mondríguez abrió la puerta para vertir para el récord del testimonio que impugna y sobre el cual indagó, extensamente. Además, los apelados presentaron al testigo Oscar Díaz Mojica quien testificó sobre su participación en el estudio de tiempo diseñado por el Dr. Webster.

Debemos señalar que, a pesar de que el Lcdo. Mondríguez objetó la admisibilidad del estudio durante el interrogatorio directo de la Lcda. Antongiorgi a la Ing. Deinerys Rodríguez, y su objeción fue declarada con lugar (pág. 1892), éste abrió las puertas para que entrara dicha evidencia durante el contrainterrogatorio que le realizara a la Ing. Deinerys Rodríguez. Es decir, en el momento que el abogado le preguntó a la Ing. Rodríguez qué fue lo que ella habló en la reunión con el Sr. Oscar Serrano, se abrió la puerta para que hablara de los estudios realizados. Además, así se desprende de la pág. 2024 de la transcripción, que el propósito de la susodicha reunión era informarle de que había una demanda, y asimismo, discutir el estudio de tiempo, ya que estaba en controversia el tiempo que les tomaba a los apelantes-apelados realizar el "*gowning*".

Por lo anterior, concluimos que este error no se cometió; el estudio se admitió durante el contrainterrogatorio que el Lcdo. Mondríguez le realizó a la Ing. Rodríguez. En cualquier caso, la evidencia que los apelantes-apelados objetan, a nuestro juicio, no fue un factor sustancial para la emisión de la sentencia cuya revocación se solicita. A nuestro juicio, de haber sido suprimida dicha prueba, estamos convencidos de que el foro recurrido hubiese llegado al mismo resultado, ya que el TPI realizó su propia apreciación de la prueba tomando en consideración los testimonios vertidos por los testigos, determinando un tiempo de siete (7) minutos y seis (6) segundos, un tiempo mayor, del que concluyó el estudio realizado.

Reiteradamente hemos señalado que, como norma general, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de instancia. *Rodríguez v. Urban Brands,* res. el 13 de enero de 2006, **2006 JTS 65**; *Argüello v. Argüello*, 155 D.P.R. 62 (2001).

En cuanto al tercer, cuarto y quinto error planteados por los apelantes, los mismos versan sobre la

aplicación incorrecta del *"Portal to Portal Act"* y la doctrina *"de minimis"*. Dicha parte aduce, además, que erró el TPI en la aplicación de la legislación federal en cuanto al tiempo trabajado para fines de quitarse y colocarse la vestimenta, y no aplicarla al tiempo trabajado durante el período de alimentos. No le asiste la razón. Veamos porqué.

Los apelantes-apelados alegan que la ley aplicable al caso es la Ley Núm. 379, *supra,* y que si aplicara el *"Portal to Portal Act"* y la norma *"de minimis"*, su aplicación no debe ser restrictiva, sino liberal y remediativa conforme a la norma de interpretación favorable al trabajador pautada por el Tribunal Supremo de Puerto Rico en infinidad de casos. Aducen, además, que en esta jurisdicción hay que pagar todo el tiempo trabajado.

Por su parte, Ethicon alega que mediante la Ley Núm. 180 de 27 de julio de 1998, la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, en general, extendió el salario mínimo federal a los trabajadores en Puerto Rico. Con su aprobación, además, incorporó como parte de nuestro derecho sustantivo lo dispuesto por la FLSA, según enmendada, por el *"Portal to Portal Act"* y su reglamentación, para todo patrono, fuese o no una empresa cubierta por el FLSA. Indican que aun antes de la aprobación de la Ley Núm. 180, *supra,* el Tribunal Supremo de Puerto Rico utilizaba por analogía las disposiciones de la ley federal y su reglamentación para resolver controversias al amparo de la ley local, cuando ésta arrojaba *"poca luz sobre el asunto"*. *Sucn. Meléndez v. Central San Vicente, Inc.,* 86 D.P.R. 398 (1962).

Luego de examinar dichos planteamientos, a la luz de la normativa aplicable, resolvemos que el TPI actuó correctamente en la aplicación de la misma.

Ethicon es una empresa en la que aplican las disposiciones de la legislación federal. Por lo tanto, los empleados de dicha empresa, le aplican las disposiciones del salario mínimo federal. El Artículo 2 de la Ley Núm. 180, *supra,* dispone lo siguiente:

*"Al aplicarse el salario mínimo federal, se reconocerá lo dispuesto en la legislación y reglamentación federal referente a cómo se paga el salario mínimo, **lo que son horas de trabajo,** cuáles empleados y ocupaciones están exentas del salario mínimo y **qué constituye horas o tiempo de trabajo**"*. (Énfasis nuestro)

Por otro lado, la Ley Núm. 379, *supra,* rige en Puerto Rico aun para aquellas empresas cubiertas por la FLSA, 29 U.S.C. sec. 201 *et seq,* a tenor con la regla de mayor beneficio establecida por la FLSA en su Sección 18, ya que sus disposiciones son más favorables en cuanto a la jornada semanal, que lo que dispone, al respecto, la legislación federal.

La Ley de Normas Razonables del Trabajo federal dispone en su Sección 18 que con relación a salarios mínimos y jornada de trabajo (40 horas), así como para el trabajo en exceso de ésta, Puerto Rico (y los estados) pueden legislar, y las disposiciones de la ley de Puerto Rico prevalecerán sobre las de la ley federal en todo aquello que sea más favorable al empleado. *Chabrán v. Bull Insular Line, supra.* En *Vega v. Yiyi Motors,* 146 D.P.R. 373 (1998), cambia esta interpretación para las horas sobre 40 a la semana. R. Delgado, *op cit.* pág. 16.

Por lo anterior, y por tratarse el caso de marras, de qué constituyen horas o tiempo de trabajo y las leyes de Puerto Rico no contener disposiciones específicas, hay que acudir a la FLSA. En particular, a la *"Portal to Portal Act",* 29 U.S.C.A. sec. 251 *et seq,* que establece de forma más específica y restrictiva lo que se considera tiempo trabajado por un empleado y, por lo tanto, compensable al amparo de la ley. Este estatuto dispone que el trabajador no recibirá compensación por actividades preliminares o posteriores a la actividad principal, o porque aun siendo una actividad compensable por ser parte integral de dicha actividad principal, el tiempo invertido es tan poco que no debe ser considerado, conforme la doctrina *"de minimis"*. La doctrina *"de minimis"* se encuentra codificada en 29 C.F.R. sec. 785.47. Dicha doctrina establece, en esencia, que períodos cortos de tiempo que por razones prácticas de administración no son registrados en el horario de trabajo de un empleado,

pueden ser obviados en la consideración del pago de horas trabajadas si son insustanciales o insignificantes. *Anderson v. Mt. Clemens Pottery Co., supra*. Se ha resuelto que diez (10) minutos o menos en actividades preliminares al comienzo del trabajo o posteriores a éste no son compensables bajo dicha norma. *Nardone v. General Motors, Inc., supra*.

Por lo tanto, al nuestras leyes no atender la controversia medular del caso de marras, el TPI acudió correctamente, a la legislación federal para determinar si el tiempo invertido por los apelantes-apelados en colocarse la indumentaria requerida por Ethicon y lavarse y secarse las manos debía considerarse tiempo trabajado. El TPI entendió que dicho tiempo era tiempo trabajado, pero que el mismo no era compensable por ser insustancial o "*de minimis*".

Por último, en cuanto a la alegación de error en cuanto a la aplicación de la legislación federal y la doctrina "*de minimis*" al proceso de "*gowning*" y "*degowning*" requerido por la empresa, pero no al período de tomar alimentos, resolvemos que dicho error no se cometió. Veamos porqué.

Los apelantes-apelados aducen que la legislación federal debió aplicarse también al período de tomar alimentos, con el propósito de que les fuera compensado en vez de los tres (3) minutos y treinta y tres (33) segundos, toda la media hora del período de tomar alimentos. Éstos apoyan su contención en la reglamentación del FLSA contenida en el 29 CFR 785.18, 785.19 que dispone que todo período de tomar alimentos menor de treinta (30) minutos no es un período de alimentos "*bonafide*" y en su consecuencia debe ser pagado en su totalidad. Indican, también, que dicho reglamento considera como períodos de alimentos "*bonafide*" aquellos de treinta (30) minutos o más, y que en la medida en que esos treinta (30) minutos se reduzcan, dejan de ser períodos "*bonafide*", y como tal, deben pagarse en su totalidad. No tienen la razón.

La FLSA no concede derecho a disfrutar de un período de tomar alimentos. Este derecho y todas las normas legales que lo regulan son criatura exclusiva de la Ley Núm. 379, *supra,* lo cual se considera de mayor beneficio para el trabajador puertorriqueño. *Jiménez v. General, supra*.

Por lo anterior, concluimos que actuó correctamente el TPI en la aplicación de la Ley Núm. 379, *supra,* por ser más beneficiosa al trabajador. Además, es cónsono con lo establecido en *Jiménez v. General, supra*.

En relación al quinto señalamiento de error, el que plantea que incidió el TPI al concederle a los apelantes-apelados la doble penalidad por el tiempo trabajado durante su período de tomar alimentos, en lugar de ordenar que se le pagara el doble de su salario y una suma igual por concepto de penalidad, resolvemos que no se cometió. Veamos porqué.

Se ha resuelto que el período de tomar alimentos no constituye una hora extra. *Salgado v. Tribunal Superior,* 92 D.P.R. 363 (1965); *Pamblanco v. Union Carbide, supra*. El concepto del período de tomar alimentos es uno distinto y totalmente independiente al de hora extra. *Jiménez v. General, supra*.

El Artículo 14 de la Ley Núm. 379, *supra,* dispone lo siguiente:

"*Todo empleado que reciba una compensación menor que la fijada en esta ley para horas regulares y horas extra de trabajo o* **para el período de tomar alimentos, tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios,** *además de los costos, y honorarios de abogado del procedimiento.*" (Énfasis nuestro)

Por su parte, el Artículo 15 de la misma ley dispone lo siguiente:

"... **Todo patrono que emplee o permita que un empleado trabaje durante el período destinado para**

*tomar alimentos vendrá obligado a pagarle por dicho período o fracción del mismo un tipo de salario igual al doble del tipo convenido para las horas regulares."* (Énfasis nuestro)

Dicha ley dispone que si el patrono no concede al empleado el período de tomar alimentos, según lo manda dicho estatuto, deberá pagar el período o fracción del período de tomar alimentos trabajado, además del salario regular o extraordinario por hora que le corresponde por dicha labor, según sea el caso, que sería una penalidad equivalente a una vez adicional el salario por hora del empleado.

El planteamiento de los apelantes-apelados pretende cobrar cuatro veces el período de tiempo en cuestión. Por lo anterior, concluimos que actuó correctamente el TPI al determinar que los tres (3) minutos y treinta y tres (33) segundos que los apelantes-apelados dedicaron en cada período de tomar alimentos a los procesos de "*gowning*" y "*degowning*" debía serles pagado, además de una cantidad igual en concepto de penalidad por cada día en que tal compensación no se hubiese otorgado.

Por último, los apelantes-apelados señalan que erró el TPI en la concesión de un dieciocho por ciento (18%) en concepto de honorarios de abogado al concluir que no era de aplicación la norma de *López Vicil v. ITT Intermedia, Inc., supra.* Es correcta su alegación. Veamos porqué.

El Lcdo. Mondríguez solicitó honorarios de abogado en un 33% por entender que este caso le requirió una intensa labor; a su vez, indicó que de no concederse la cantidad solicitada, por lo menos, debía de concederse un veinticinco por ciento (25%) de honorarios de abogado, de acuerdo a lo establecido en *López Vicil v. ITT Intermedia, Inc., supra.* Alegó, además, que a pesar de que el citado caso resolvió que los honorarios de abogado en las reclamaciones laborales, al amparo de la Ley Núm. 100 de 30 de junio de 1959, sería de un veinticinco por ciento (25%), el mismo estableció los criterios a utilizarse para la fijación de dichos honorarios. Indicó que dicho caso ha servido para fijar criterios de igual aplicación no sólo para casos al amparo de la Ley Núm. 100, *supra,* sino para todo caso tramitado al amparo de una ley protectora del trabajo que dispone taxativamente el pago de honorarios de abogado, pero no establece criterios para la cuantía.

Por su parte, Ethicon alegó que no es de aplicación la norma establecida en *López Vicil v. ITT Intermedia, Inc., supra,* ya que este caso no es bajo la Ley Núm. 100, *supra.*

El planteamiento del Lcdo. Mondríguez es válido. Ha sido una tendencia en las reclamaciones laborales que no tengan una cuantía fija en honorarios de abogado el conceder un veinticinco por ciento (25%) de la cantidad adjudicada al trabajador, de acuerdo al caso *López Vicil v. ITT Intermedia, Inc., supra.* Véase *S.L.G. Afanador v. Roger Electric Co, Inc., supra.*

El caso ante nuestra consideración, es uno que contiene once (11) querellantes que reclaman tiempo trabajado no compensado. Luego de escuchar los planteamientos de las partes y aquilatar la prueba presentada, el TPI les resolvió a su favor y les concedió la paga de tres (3) minutos y treinta y tres (33) segundos por el tiempo que invertían en los procesos de "*gowning*" y "*degowning*" en el período de tomar alimentos. El TPI concedió, además, un dieciocho por ciento (18%) en concepto de honorarios de abogado. Sin embargo, esta determinación no nos parece cónsona con las particularidades del caso. Veamos.

Esta reclamación, a pesar de no ser bajo la Ley Núm. 100, *supra,* requirió esfuerzo y preparación del abogado de los apelantes-apelados. Aunque se trata de una reclamación de horas de trabajo y la ley nada dispone sobre el por ciento en honorarios de abogado que se va a conceder, ha sido norma reiterada la utilización de lo resuelto en *López Vicil v. ITT Intermedia, Inc., supra.*

Por lo anterior, resolvemos que abusó en su discreción el TPI en la concesión de honorarios de abogado, por lo que procede la imposición de un veinticinco por ciento (25%) en honorarios de abogado.

La evaluación y fijación de honorarios de abogado deben estar dirigidas por el principio de que la profesión de la abogacía no es un mero negocio con fines de lucro, sino que se considera parte integrante de la administración de la justicia. Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re: Clavell Ruiz*, 131 D.P.R. 500 (1992).

Advertimos que los tribunales apelativos no intervendrán con la determinación de honorarios realizada por instancia, a menos que la misma revele un abuso de discreción. Finalmente, puntualizamos que el cálculo de estos honorarios no debe convertirse en un segundo litigio. *López Vicil v. ITT Intermedia, Inc., supra.*

Luego de discutir todos los errores planteados por los apelantes-apelados, procedemos a dirimir las controversias señaladas por Ethicon en el KLAN-07-00389.

Por estar estrechamente relacionados, procedemos a discutirlas en conjunto.

En síntesis, nos corresponde resolver si erró el TPI al conceder a los apelantes-apelados compensación por una reclamación, alegadamente, no incoada por éstos, consistente en ser resarcidos por un período de tiempo de tres (3) minutos y treinta y tres (33) segundos diarios, más el pago de una suma igual como penalidad. Ethicon aduce, además, que el conceder este reclamo que no fue parte de la querella, se lesionó su derecho al debido proceso de ley. Además, que erró el TPI al tomar conocimiento judicial de las determinaciones de hechos del caso *Bejil v. Ethicon, Inc., supra.* No les asiste la razón. Veamos porqué.

Surge de la alegación número 6 de la querella enmendada lo siguiente:

*"Los uniformes están bajo el control de la querellada. Esta le hace entrega de los mismos a los querellantes antes de comenzar su turno de trabajo, les exige que se lo pongan y se sometan al proceso de higiene, previo a entrar al área de producción. El proceso de entrar y salir del trabajo se resume en los siguientes términos:*

| | |
|---|---|
| *Antes de entrar al área de manufactura* | *Salida del área de manufactura* |
| *Higiene personal* | *Ponchar tarjeta de asistencia* |
| *Ponerse el uniforme* | *Quitarse el uniforme* |
| *Ponchar tarjeta de asistencia* | |

*Dicho proceso se repite cada vez que los querellantes entran y salen del área de manufactura. Esto es, entrada al trabajo, salida a tomar alimentos, entrada de tomar alimentos, salida del trabajo."* (Énfasis nuestro)

Los apelantes-apelados presentaron prueba, mediante sus testimonios, cómo se reducían sus treinta (30) minutos del período de tomar alimentos. Dicho período se vio irremediablemente afectado por el tiempo consumido por el primer proceso de *"degowning"* y el segundo *"gowning"*, los cuales se realizaban dentro del período de tomar alimentos.

A pesar que los planteamientos de Ethicon son válidos en cuanto a que los apelantes-apelados no hicieron un reclamo *"per se"*, en cuanto al primer período de tomar alimentos, entendemos que dicha reclamación formaba parte de su acción en cuanto al pago del tiempo que les tomaba realizar el *"gowning"* y el *"degowning"* durante su jornada de trabajo, la cual no les era pagada conforme a la ley, según quedó demostrado.

A pesar de las múltiples objeciones de la representación legal de Ethicon, en cuanto a la admisión de prueba relacionada al tiempo que se reducía la media (1/2) hora del período de tomar alimentos de los apelantes-apelados, y ante los planteamientos del Lcdo. Mondríguez, en relación a que no presentaba dicha prueba para enmendar las alegaciones, el TPI determinó que de acuerdo a la prueba presentada, dicho período se afectó con los procedimientos requeridos por la empresa.

Reiteradamente hemos resuelto que los tribunales deben conceder lo que en derecho proceda, aunque ello no haya sido perfectamente solicitado. Los foros judiciales debemos hacer todo lo que esté a nuestro alcance para que los casos se fallen en sus méritos. *Soto López v. Colón,* 143 D.P.R. 282, 291 (1997).

En relación al planteamiento de violación al debido proceso de ley, concluimos que no se cometió.

En cuanto a la alegación de que incidió el TPI en tomar conocimiento judicial del caso *Bejil v. Ethicon, supra,* este error tampoco se cometió. Veamos.

De acuerdo a la Regla 11 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 11, provee para la toma de conocimiento judicial de hechos adjudicativos, es decir los hechos que están en controversia de acuerdo con las alegaciones de las partes y del derecho sustantivo que rige el asunto.

Esta regla permite que se tome conocimiento judicial de dichos hechos, cuando se establece que éstos son de conocimiento general dentro de la jurisdicción territorial o cuando éstos son susceptibles de determinación inmediata y exacta a través de una fuente, cuya exactitud no puede ser cuestionada. *Pérez v. Municipio de Lares,* 155 D.P.R. 697 (2001).

## IV

Atendidos todos los señalamientos de errores esbozados en los respectivos escritos de apelación de las partes, y de conformidad con lo precedentemente expuesto, modificamos la sentencia en cuanto al por ciento de *honorarios de abogado concedido, y así modificada, se confirma la sentencia apelada. Se devuelve el caso al TPI* para que proceda a cuantificar las cantidades de dinero que le corresponda a cada trabajador de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones